# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JEFFERIES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 2026-0410-CDW |
| MOUNTAIN STATE ENERGY HOLDINGS, LLC, | |
| Defendant. | |

## ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT ON ENTITLEMENT TO ADVANCEMENT

**WHEREAS:**

A.      This is an advancement action.[1]

B.      Plaintiff Jefferies LLC ("Jefferies") is a member of defendant Mountain State Energy Holdings, LLC ("Mountain State").[2]

C.      Jefferies, along with other parties, is a defendant in a civil lawsuit brought by Trilogy Portfolio Company, LLC ("Trilogy"), another member of Mountain State ("Underlying Proceeding").[3]

D.      In the Underlying Proceeding, Trilogy asserts that, together with its affiliates, "it held and continues to hold a controlling interest in Mountain

---

[1] *See* Verified Compl. for Advancement ("Compl."), Dkt. 1.

[2] *See id.* Ex. 2.

[3] Am. Compl., *Trilogy Portfolio Co., LLC v. Jefferies LLC*, Index No. 651425/2026 (N.Y. Sup. Ct. June 30, 2026) ("N.Y. Am. Compl."), Dkt. 35 at 1.

State," with the right under Mountain State's LLC Agreement to designate two members of Mountain State's five-person board of directors ("Board").[4]

E.    Trilogy also asserts a "right of first offer" it holds under Section 9.5 of the LLC Agreement.[5]  Section 9.5(a) states:

> Prior to an Initial Public Offering, any Transfer of Common Shares by a holder (the "ROFO Transferring Holder") to any Third Party Purchaser (including, for purposes of this Section 9.5(a), any other Member) (the "Proposed ROFO Transferee(s)"), shall not occur and shall be null and void ab initio unless, prior to the consummation of such Transfer, the ROFO Transferring Holder shall, at least ten (10) Business Days prior to the date that such Transfer is to be consummated, deliver a written notice (the "ROFO Offer Notice") to Trilogy, Cetus, and Eaton Vance (so long as such holder has a percentage interest equal to or greater than five percent (5%) of all of the then outstanding Shares (on a fully diluted basis)) (the "Offerees") . . . . Each ROFO Offer Notice shall constitute a binding, irrevocable and exclusive offer by the ROFO Transferring Holder to sell to the Offerees the Offer Shares at the Sale Price on the material terms set forth in the ROFO Offer Notice[.][6]

F.    The Underlying Proceeding alleges that Jefferies and its client, Hudson Bay Capital ("Hudson Bay"), made misrepresentations to the Board and, by extension, Trilogy, in order to induce Trilogy to refrain from exercising

---

[4] *Id.* ¶ 27; *see also* Compl. Ex. 1 ("LLC Agreement") § 5.3(a)(ii).

[5] N.Y. Am. Compl. ¶ 1.

[6] LLC Agreement § 9.5(a).  The first sentence of Section 9.5 reflects the amended version of Section 9.5(a).  *See* Compl. Ex. 4 at 2.

its right of first offer in multiple transactions designed to give Hudson Bay a controlling interest in Mountain State.[7]

G.    At first, Trilogy allegedly agreed to refrain from exercising its right for a single transaction.[8]  Trilogy allegedly agreed because Jefferies and Hudson Bay executed confidentiality agreements with Mountain State that obligated Jefferies and Hudson Bay to refrain from making other acquisitions of Mountain State shares past the first one.[9]

H.    The Underlying Proceeding alleges Jefferies and Hudson Bay induced Trilogy, through purported misrepresentations, to approve amendments to the confidentiality agreements.[10]  The amendments allowed Jefferies and Hudson Bay to engage in additional transactions of Mountain State shares.[11] Trilogy's approval was allegedly critical because, as noted, Trilogy purports to have a controlling interest (together with Cetus, another Offeree) in Mountain State.[12]

---

[7] *See* N.Y. Am. Compl. ¶¶ 3, 32, 93.

[8] *See id.* ¶¶ 51–53.

[9] *See id.* ¶¶ 42, 63.

[10] *See id.* ¶¶ 81, 85–86, 88, 90–92.

[11] *E.g., id.* ¶ 76.

[12] *See id.* ¶¶ 32, 93.

I.     In the Underlying Proceeding, Trilogy asserts seven causes of action, four of which allege breaches of Mountain State's LLC Agreement.[13] The counts all relate to Jefferies's and Hudson Bay's alleged scheme to mislead Trilogy and Mountain State, through misrepresentations made primarily to Mountain State, over the course of negotiations between the parties.[14]

J.     In the Underlying Proceeding, Trilogy requests judgment "[d]irecting that Jefferies and Hudson Bay comply with the ROFO requirements under the LLC Agreement" and give Trilogy another opportunity to exercise its right of first offer for the contested transactions.[15] It also seeks an order "directing that Jefferies and Hudson Bay, and any John Doe Defendants acting in concert with Jefferies and/or Hudson Bay, cease interfering with Trilogy Portfolio's rights, including under the LLC Agreement and that any purported conveyances or transfers by either Jefferies or Hudson Bay Longview in violation of the LLC Agreement are null and void *ab initio*[.]"[16]

K.     On March 12, 2026, Jefferies submitted an advancement demand to Mountain State.[17] The demand included a written commitment "to repay all

[13] *See id.* ¶¶ 125–74.

[14] *See id.*

[15] *See, e.g., id.* 42 (Prayer for Relief ¶ 1).

[16] *Id.* (Prayer for Relief ¶ 2).

[17] Compl. Ex. 6.

funds advanced to Jefferies by the Company if it shall ultimately be determined by a court of competent jurisdiction that Jefferies is not entitled to be indemnified by the Company."[18]  Neither the advancement demand nor the written commitment specifies the amount of reimbursement demanded.

L.      On March 20, Mountain State rejected the advancement demand.[19]

M.      On March 26, Jefferies filed the Verified Complaint for Advancement.[20]  The parties stipulated to cross-motions for summary judgment and oral argument on the issue of Jefferies's entitlement to advancement under Mountain State's LLC Agreement.[21]

N.      The court heard oral argument on July 1.[22]  On July 8, Mountain State filed a supplemental brief addressing the amended complaint in the Underlying Proceeding.[23]  Jefferies elected not to file a supplemental brief.[24]

---

[18] Transmittal Aff. of Scott S. Balber in Supp. of Pl. Jefferies LLC's Opening Br. in Supp. of its Mot. for Summ. J. for Advancement, Dkt. 15 Ex. 1.

[19] Compl. Ex. 7. Mountain State noted in its rejection that, under the confidentiality agreement, it is also owed reimbursement of legal fees it has incurred in a separate litigation with Jefferies. *See id.*

[20] Dkt. 1.

[21] Dkts. 7–8.

[22] Dkt. 31.

[23] Dkt. 32.

[24] Dkt. 33.

On July 10, Jefferies submitted a copy of the recently filed amended complaint in the Underlying Proceeding.[25]

**IT IS ORDERED**, this 27th day of July, 2026, that:

1.    The parties have cross-moved for summary judgment under Court of Chancery Rule 56.[26]  Under this rule, "the Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Ct. Ch. R. 56(a).[27]

2.    "Summary judgment is an appropriate way to resolve advancement disputes because 'the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought.'" *Rhodes v. bioMerieux, Inc.*, 2024 WL 669034, at *7 (Del. Ch. Feb. 19, 2024) (quoting *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co., LLC*, 853 A.2d 124, 126–27 (Del. Ch. 2004)).  "In determining whether to award

---

[25] Dkt. 35.

[26] *See* Dkts. 13–15.

[27] Court of Chancery Rule 56 was amended effective June 1, 2026.  *See* Order Amending Rules 46, 54–65.1, 67, 69–72, 77–78, 81–83, 85–88, and 100 of the Court of Chancery Rules, https://courts.delaware.gov/forms/download.aspx?id=328858. According to the comment accompanying amended Rule 56, the revisions are intended to align Rule 56 "to the extent possible" with its counterpart in the Federal Rules of Civil Procedure, and "[e]xcept as noted, no substantive change in the interpretation of the rule [is] intended, and prior Delaware authorities interpreting the rule remain applicable." *Id.* at 8.

advancement, the [c]ourt will look to the plain meaning of the advancement provisions in the governing instruments." *Id.* (citation modified).

3.     Jefferies asserts a mandatory advancement right under Section 7.2(b) of the LLC Agreement.[28]  Section 7.2(b) states:

> The Company shall pay reasonable, documented expenses incurred by any Indemnitee in defending any action, suit or proceeding described in Section 7.2(a) in advance of the final disposition of such action, suit or proceeding as such Damages are incurred; provided, however, that any such advance shall only be made if such Indemnitee provides written affirmation to repay such advance if it shall ultimately be determined by a court of competent jurisdiction that such Indemnitee is not entitled to be indemnified by the Company pursuant to this Section 7.2.[29]

4.     Section 7.2(a) is the indemnification provision.[30]  It defines "Indemnitee" as a "Protected Person."[31]  Section 7.1(a) in turn defines "Protected Persons" as "the Members, Managers, officers of the Company or any of its direct or indirect Subsidiaries, any of their respective Affiliates, nor any of their respective officers, directors, employees, partners, members, representatives or equityholders[.]"[32]

---

[28] *See* Pl.'s Opening Br. in Supp. of its Mot. for Summ. J. for Advancement ("Pl.'s Opening Br."), Dkt. 15 at 4–6.

[29] LLC Agreement § 7.2(b).

[30] *See id.* § 7.2(a).

[31] *Id.*

[32] *Id.* § 7.1(a).

5. An "action, suit or proceeding described in Section 7.2(a)" is one "that . . . arise[s] out of or in connection with (i) the affairs of the Company or the performance by such Indemnitee of any of the Indemnitee's responsibilities hereunder or (ii) the service at the request of the Company by such Indemnitee as a partner, member, manager, director, officer, trustee, employee or agent of any other Person[.]"[33]

6. Applying the foregoing definitions to Section 7.2(b), a Member of Mountain State (like Jefferies) has a mandatory right to advancement[34] if they are defending a suit that "arise[s] out of or in connection with (i) the affairs of [Mountain State] or the performance by such [Member] of any of the [Member]'s responsibilities hereunder [(*i.e.*, under the LLC Agreement)] or (ii) the service at the request of the Company by such [Member] as a partner, member, manager, director, officer, trustee, employee or agent of any other Person[.]"

7. Mountain State makes two arguments against this interpretation of Section 7.2(b).

8. First, Mountain State argues Section 7.2(a)'s indemnification right only vests where "the Indemnitee acted in good faith and in a manner such Indemnitee reasonably believed to be in or not opposed to the best interests of

---

[33] *Id.* § 7.2(a).

[34] The use of "shall" in Section 7.2(b) creates a mandatory advancement obligation. *See, e.g.*, *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 207 (Del. 2005).

the Company[.]"[35] Mountain State asserts Section 7.2(a)'s good-faith requirement extends to Section 7.2(b)'s mandatory advancement right.[36] Mountain State asserts Jefferies's conduct at issue in the Underlying Proceeding was not in good faith or in Mountain State's best interests, and therefore Jefferies is not entitled to mandatory advancement.[37] This argument fails.

9.    I agree with Jefferies that Section 7.2(a)'s good-faith requirement does not extend to Section 7.2(b).[38] Section 7.2(b) extends mandatory advancement to "any action, suit or proceeding *described* in Section 7.2(a)[.]"[39] It does not incorporate the conditions Section 7.2(a) imposes on an ultimate right to indemnification.

10.    If a determination of good faith cannot be made "until the merits of the underlying controversy are adjudicated,"[40] then imposing the good-faith requirement on Section 7.2(b) would effectively bar advancement and obstruct

---

[35] Def.'s Br. in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Opening Br."), Dkt. 14 at 16–17.

[36] *Id.*

[37] *Id.* 17.

[38] Pl.'s Opening Br. in Supp. of its Mot. for Summ. J. for Advancement ("Pl.'s Opening Br."), Dkt. 15 at 30.

[39] LLC Agreement § 7.2(b) (emphasis added).

[40] *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 578 (Del. 2006) (first citing *Johnson v. Gene's Supermarket, Inc.* 453 N.E.2d 83, 90 (Ill. App. 1983); and then citing *Homestore*, 888 A.2d at 212).

its purpose as a prompt extension of credit not predicated on an ultimate entitlement to indemnification.[41]  This argument fails.

11.     Second, Mountain State argues Section 7.2(b) offers mandatory advancement "only for those serving the Company in a managerial capacity or those acting on the Company's behalf or for the Company's benefit."[42]  This interpretation of Section 7.2(b) is unsupported by its plain language.[43]  If Section 7.2(b) only extends advancement to Members that manage the business and affairs of Mountain State, it would say so.[44]   Instead, it extends advancement to Members unconditionally.[45]  So this argument also fails.

---

[41] *See Invictus Glob. Mgmt., LLC v. Corbin Cap. P'rs, L.P.*, 2026 WL 981684, at *7 (Del. Apr. 13, 2026); *Gandhi-Kapoor v. Hone Cap. LLC*, 305 A.3d 707, 718–19 (Del. Ch. 2023).

[42] Def.'s Opening Br. 20.

[43] *See, e.g.*, *Lehr v. Aspen Power P'rs LLC*, 2026 WL 866854, at *7 n.95 (Del. Ch. Mar. 30, 2026) ("Under Delaware law, limited liability company agreements are interpreted using standard principles of contract interpretation.  The court construes the contract as a whole, giving each word its plain meaning and effect, so as not to render any provision illusory or meaningless.") (first citing *Godden v. Franco*, 2018 WL 3998431, at *8 (Del. Ch. Aug. 21, 2018); then citing *Nw. Nat'l Ins. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996); and then citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)); *see also Godden v. Franco*, 2018 WL 3998431, at *8 (Del. Ch. Aug. 21, 2018) ("The contract's 'terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language.'") (quoting *GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

[44] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *14 (Del. Ch. Jan. 23, 2006).

[45] *See* LLC Agreement § 7.1(a).  Mountain State argues that, in evaluating the LLC Agreement as a whole, it is clear "the affairs of the Company" is a reference to "the business and affairs of the Company," which it says means only those with

12. Mountain State next argues that Jefferies is not entitled to advancement under Section 7.2(b) because the Underlying Proceeding, and Jefferies's involvement in it, does not "arise out of or in connection with" either the affairs of Mountain State or Jefferies's responsibilities under the LLC Agreement.[46] Jefferies, of course, argues otherwise.[47] I agree with Jefferies.

13. The Supreme Court has explained the phrase "arise out of or in connection with" connotes a broad scope. *See Parfi Hldgs. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155–57 (Del. 2002). In *Parfi*, the court evaluated the phrase in the context of an arbitration agreement. The court explained, "[b]y agreeing to submit to arbitration 'any dispute, controversy, or claim arising out of or in connection with' the Underwriting Agreement, [the parties]

---

managerial power can receive advancement because only such persons can affect "the business and affairs of the Company" under the LLC Agreement. *See* Def.'s Opening Br. 17–21. This is wrong. Section 7.2(b) contains no implication that only those with managerial powers can receive advancement. The distinction Mountain State tries to draw might have purchase if the advancement obligation here were limited to activity "on behalf of" Mountain State. *See Fresh Express Vegetable, LLC v. Latitude 36 Foods, LLC*, 2026 WL 907264, at *3 (Del. Ch. Apr. 2, 2026) (ORDER) (construing "on behalf of the Company" to prevent a member's advancement because under the applicable LLC agreement "a member cannot act 'on behalf of' the Company unless and until the board formally grants the member authority to do so."). But the LLC Agreement uses much broader language—"aris[ing] out of or in connection with"— and the LLC Agreement's drafters are presumed to have intended that. *See DeLucca*, 2006 WL 224058, at *14.

[46] Def.'s Opening Br. 26–30.

[47] Pl.'s Opening Br. 19–22; Pl.'s Answering Br. in Opp. to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Answering Br."), Dkt. 25 at 10–15.

have signaled an intent to arbitrate all possible claims that touch on the rights set forth in their contract." *Id.* at 156.

14.     This court in *DeLucca v. KKAT Management LLC* explained the term "affairs," as used here, is similarly broad, referring to "business dealings, a concern, a business, a matter to be attended to." 2006 WL 224058, at *10 n.34 (quoting *Affairs*, THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH 22 (9th ed. 1995)).

15.     Applying *Parfi* and *DeLucca* here, Jefferies's defense of the Underlying Proceeding is advanceable if the Underlying Proceeding touches on either (1) the business dealings, concerns, or matters of Mountain State or (2) plaintiff's performance of any of its responsibilities under the LLC Agreement. The Underlying Proceeding satisfies either option.

### The Underlying Proceeding Touches on Mountain State's Affairs

16.     The Underlying Proceeding alleges Jefferies and Hudson Bay made misrepresentations to Mountain State in order to induce it (and, by extension, Trilogy) to (1) execute confidentiality agreements with Jefferies and Hudson Bay,[48] (2) approve and assent to amendments to those confidentiality agreements that allowed Jefferies and Hudson Bay to acquire a greater interest

---

[48] *See* N.Y. Am. Compl. ¶¶ 4, 37–54, 58–65.

in Mountain State,[49] and (3) induce Trilogy to refrain from exercising its right of first offer.[50] These central allegations of the Underlying Proceeding touch on the business dealings and concerns of Mountain State.[51]

17. Trilogy also alleges in the Underlying Proceeding that it would have objected to the amendments to the confidentiality agreements, which would have dissuaded the Board from assenting to the amendments, but for Jefferies's and Hudson Bay's misrepresentations.[52] In other words, the Underlying Proceeding relates to the Board's deliberation process when negotiating the confidentiality agreements and representing the interests of a controlling member. This, too, touches on the business dealings and concerns of Mountain State. Indeed, Trilogy alleges Mountain State acted as its "conduit" throughout the alleged negotiations.[53]

---

[49] *See id.* ¶¶ 74–83, 85–92, 96–99.

[50] *See id.* ¶¶ 3, 36–42, 45, 50, 61, 64–66, 69–70, 73, 105, 111, 118–19.

[51] In *Parfi*, the court explained "[g]enerally, purportedly independent actions do not touch matters implicated in a contract if the independent cause of action could be brought had the parties not signed a contract. 817 A.2d at 156 n.124. Similar here, it is clear the Underlying Proceeding touches the affairs of Mountain State because, but for the involvement of Mountain State—whether its direct negotiation of the confidentiality agreements with Jefferies and Hudson Bay, its direct negotiation of the amendments to the confidentiality agreements with Jefferies and Hudson Bay, its LLC Agreement, or its position as a "conduit" for Trilogy—the Underlying Proceeding could not likely be brought.

[52] N.Y. Am. Compl. ¶¶ 85–98.

[53] *Id.* ¶¶ 3, 36, 41–42, 58, 61, 79, 87, 97, 145.

18. For these reasons, the Underlying Proceeding arises out of or in connection with the affairs of Mountain State. Jefferies is thus entitled to mandatory advancement under Section 7.2(b) of the LLC Agreement.

**The Underlying Proceeding Touches on Jefferies's Responsibilities Under the LLC Agreement**

19. The Underlying Proceeding consistently implicates Jefferies's responsibilities as a "ROFO Transferring Holder" under Section 9.5(a) of the LLC Agreement.

20. In the Underlying Proceeding, Trilogy asserts that "[a]ny proposed purchase or sale of [Mountain State] stock pursuant to the Confidentiality Agreements by Jefferies or Hudson Bay remained subject to the terms of the LLC Agreement, including the ROFO Notice requirements under Article IX of the LLC Agreement."[54] Trilogy also alleges that "Jefferies intends to repudiate its ROFO obligations to offer [its] shares to the ROFO Offerees, including Trilogy Portfolio."[55] The amended complaint also seeks an order declaring "that Jefferies is obligated to comply with the terms and conditions of the LLC Agreement, including the ROFO requirements, notwithstanding any provision of its Confidentiality Agreement, as Amended."[56]

---

[54] *Id.* ¶ 56.

[55] *Id.* ¶ 136.

[56] *Id.* ¶ 170; *see also id.* ¶ 137 ("Jefferies should be required to issue a ROFO Notice to the ROFO Offerees, including Trilogy Portfolio, for such 158,958 shares, at a price, upon information and belief, of $19.75 per share.").

21. In sum, the Underlying Proceeding alleges that Jefferies interfered with Trilogy's right of first offer through its misrepresentations, and that Jefferies should issue new ROFO Notices to Trilogy so that it can exercise its right of first offer on the contested acquisitions of Mountain State shares. Trilogy seeks from the New York court a declaration of its rights and Jefferies's obligations under the LLC Agreement. The Underlying Proceeding directly touches on Jefferies's responsibilities under Section 9.5(a) of the LLC Agreement. Jefferies is thus entitled to mandatory advancement under either option of Section 7.2(b)'s first prong.[57]

22. For these reasons, I recommend the court grant Jefferies's motion for summary judgment and deny Mountain State's.

---

[57] Mountain State also argues that Jefferies "is barred from claiming advancement because it has unclean hands and/or is estopped by its own wrongdoing and misconduct arising from its refusal to reimburse [Mountain State] for expenses arising from" a separate litigation between the parties. Def.'s Opening Br. 30. This is wrong. As explained in *Cianciulli v. Webinar.net, Inc.*, "unclean hands is a defense to advancement only where a defendant can demonstrate that the plaintiff engaged in inequitable conduct *related directly to the advancement process itself*." 2025 WL 2840851, at *6 (Del. Ch. Oct. 6, 2025) (first citing *Tafeen v. Homestore, Inc.*, 2004 WL 556733, at *6–7 (Del. Ch. Mar. 22, 2004); and then citing *Nakahara v. NS 1991 Am. Tr.*, 739 A.2d 770, 791–92 (Del. Ch. 1998)) (emphasis added). Unclean hands does not apply here because the misconduct Mountain State complains of relates not to the advancement process at issue here but obligations arising from a separate contract. *See* Def.'s Opening Br. 30–31. And, to the extent Mountain State requests estoppel, its request is misplaced. *See, e.g.*, *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005), *aff'd*, 884 A.2d 512 (Del. 2005) ("The doctrine of equitable estoppel is invoked 'when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change positions to his detriment.") (quoting *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903–04 (Del. 1965)). Mountain State has failed to assert it reasonably relied on Jefferies's conduct to prejudicially change its position on an issue.

## Fees-on-Fees and Interest

23. Jefferies is entitled to fees-on-fees for its success on the merits of its advancement suit.[58] Jefferies is also entitled to prejudgment interest at the legal rate.[59]

24. "A party from whom advancement is improperly withheld 'is entitled to interest computed from the date of demand,' defined as the date on which the party 'specified the amount of reimbursement demanded and produced his written promise to pay.'" *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1058 (Del. Ch. 2014) (quoting *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 & n.10 (Del. 1992)).

25. Jefferies did not specify the amount of reimbursement demanded in its March 11, 2026 written commitment. Nor does the LLC Agreement impose a deadline on Mountain State's post-demand advancement. Therefore, "[f]or future advancement requests from [Jefferies], [Mountain State] shall have a commercially reasonable period of ten days to provide the requested advancement before prejudgment interest shall begin to accrue." *Id.*

\* \* \*

---

[58] *See Leiske v. Kidd*, 2026 WL 265493, at \*5 (Del. Ch. Feb. 2, 2026) ("Under settled Delaware law, fees-on-fees are awarded to a successful plaintiff in an advancement action to prevent the victory from being [P]yrrhic.") (citing *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561–62 (Del. 2002)).

[59] *See 6 Del. C.* § 2301(a).

26. This is a Report under Court of Chancery Rule 144. Under Rule 144(d)(2) and the Chancellor's assignment letter,[60] any party wishing to take exception to this Report must file a notice of exceptions by July 30, 2026.

27. If no exceptions are taken by July 30, or the Chancellor or a Vice Chancellor affirms this Report after exceptions, then within five business days of the expiration of the exceptions deadline or the issuance of an affirming decision from a constitutionally appointed officer of this court, the parties must meet and confer and submit a proposed order implementing this decision that includes a plan for resolving fee disputes similar to the plan laid out in *Danenberg v. Fitracks, Inc.*[61]

/s/ *Christian Douglas Wright*
Magistrate in Chancery

---

[60] Dkt. 2.

[61] 58 A.3d 991, 1003–04 (Del. Ch. 2012).